*348 Opinión disidente emitida por el
Juez Presidente Señor Hernández Denton, a la cual se une el Juez Asociado Señor Rebollo López.
Disiento de la sentencia dictada por el Tribunal de Apelaciones —la cual se confirma por hallarse igualmente dividido el Tribunal— por entender que la naturaleza y el funcionamiento de la Asociación de Empleados del Estado Libre Asociado (Asociación) impiden que se le trate como a cualquier empresa privada y, por ende, que se le aplique indistintamente las disposiciones de la Ley Núm. 80 de 30 de mayo de 1976 (29 L.P.R.A. sec. 285a et seq.), estatuto destinado al sector privado del país. Por otro lado, considero que —aún si se entendiera que dicho estatuto podría cobijar a los empleados de la Asociación— la protección no se extiende al cargo de Director Ejecutivo, ya que dicho funcionario responde a los intereses de la Junta de Directores y no posee una expectativa de continuidad en el empleo.
I
La Junta de Directores de la Asociación nombró al Sr. Wilfredo García Burgos como Director Ejecutivo de la Asociación en febrero de 1997. Poco después, esta Junta cambió su composición y, tras varios incidentes que llegaron hasta la atención de este Tribunal, destituyó al señor García Burgos por no ser de su confianza.
El señor García Burgos presentó una demanda contra la Asociación al amparo de la Ley Núm. 80, supra, alegando que se le destituyó sin justa causa, y solicitó el pago de la mesada. Por su parte, la Asociación presentó una solicitud de sentencia sumaria, mediante la cual adujo que el demandante no estaba protegido por la Ley Núm. 80, supra. El tribunal de instancia acogió la posición de la Asociación. *349 Concluyó que el señor García Burgos no tenía derecho a los beneficios de la Ley Núm. 80, supra, porque su nombramiento era de Director Ejecutivo, puesto sobre el cual la Junta de Directores conserva discreción. A la luz de ese análisis, determinó que un cambio en la composición de la Junta conllevaba la designación de un nuevo director si ésta lo deseaba así. Indicó, además, que su designación constituyó un contrato por tiempo determinado implícito, por lo que no se cumplía con los requisitos de la ley.
El señor García Burgos acudió ante el Tribunal de Apelaciones, el cual revocó la determinación. Dicho foro concluyó que la Ley Núm. 80, supra, ampara a los empleados ejecutivos como el señor García Burgos y que la mera falta de confianza no constituye justa causa para el despido. En vista de ello, concluyó que el señor García Burgos tiene el derecho al pago de la mesada. Insatisfecha con el dicta-men, la Asociación acudió ante nos reproduciendo los mismos argumentos que presentó ante el foro de instancia.
Expedimos el auto y, por hallarse igualmente dividido el Tribunal, se dicta sentencia confirmatoria de la que emitió el Tribunal de Apelaciones. Por las razones que expondremos a continuación, disentimos.
II
A. La Asociación de Empleados del Estado Libre Asociado (Asociación)
... es “una institución pública de carácter compulsorio para todos los empleados y funcionarios públicos” del Gobierno de Puerto Rico “siendo sus fines estimular el ahorro entre sus asociados y asegurarlos contra inutilidad física o muerte, efectuar préstamos, proveerlos de hogares y clínica para el tratamiento médico de ellos y sus familiares .... (Enfasis en el original suprimido y énfasis suplido.) First Federal v. Srio. de Hacienda, 86 D.P.R. 56, 70 (1962).
Aun cuando este Tribunal ha indicado que la Asociación *350 no constituye una agencia, departamento, instrumentalidad o corporación pública —Asoc. de Empleados del E.L.A. v. Vázquez, 130 D.P.R. 407 (1992)— lo cierto es que hemos resuelto que no es “un negocio privado ni tiene fines de lucro o especulación”. (Enfasis suplido.) Berríos Miranda v. Asociación de Empleados, 88 D.P.R. 809, 820 (1963). Por el contrario, la Asociación “es un organismo creado gubernamentalmente, altamente reglamentado, cuyo propósito es implementar la política gubernamental del Gobierno del Estado Libre Asociado de Puerto Rico de estimular el ahorro entre los empleados públicos”. (Énfasis suplido.) Asoc. de Empleados del E.L.A. v. Vázquez, supra, pág. 429.
De hecho, en atención a las particularidades de la Asociación y al alto interés público que la distingue, el legislador dispuso que sus bienes, cuentas, desembolsos, fondos e ingresos estarán sujetos a la fiscalización de la Oficina del Contralor. 3 L.P.R.A. see. 8631. De la misma forma, se estableció que la Asociación estará bajo la jurisdicción y el poder de la Oficina de Ética Gubernamental. 3 L.P.R.A. sec. 863m.
B. Por otro lado, la Ley Núm. 80, supra, provee una indemnización para aquellos empleados contratados por término indefinido que son despedidos sin justa causa. 29 L.P.R.A. sec. 185a. Hasta este momento, las disposiciones de la ley se han aplicado en el ámbito del empleo privado y no hemos resuelto si se podrían extender a otros contextos. No obstante, el Departamento del Trabajo y Recursos Humanos ha expresado que dicha legislación está dirigida a los empleados de la empresa privada y a aquellas entidades que operan como empresas privadas. Guía Revisada para la aplicación de la Ley Núm. 80, Departamento del Trabajo y Recursos Humanos, 21 de septiembre de 2000, págs. 24-25.
En el empleo público, por su parte, rigen las disposiciones y protecciones que concede la Ley de la Administración de Recursos Humanos, Ley Núm. 184 de 3 de agosto de *351 2004 (3 L.P.R.A. secs. 1461-1468p), que derogó la antigua Ley de Personal del Servicio Público. Esta normativa está fundamentada en el principio de mérito, en virtud del cual los empleados incluidos en el servicio de carrera gozan de seguridad en el empleo, siempre que satisfagan los criterios de productividad, eficiencia, hábitos, actitudes, orden y disciplina que deben prevalecer en el servicio público. 3 L.P.R.A. sees. 1462 y 1462e. Aunque las disposiciones de esta legislación no se extienden a las corporaciones o instrumentalidades públicas o público-privadas que funcionan como empresas o negocios privados, la ley exige que dichas entidades adopten reglamentos de personal que incorporen el principio de mérito. 3 L.P.R.A. see. 1462.
Por su parte, los empleados incluidos en el servicio de confianza no gozan de las protecciones que concede el principio de mérito. 3 L.P.R.A. see. 1462. Tales empleados son los que intervienen o colaboran sustancialmente en la formulación de política pública, los que asesoran directamente o los que prestan servicios directos al jefe de la agencia. 3 L.P.R.A. see. 1465(2). Por la naturaleza de sus funciones, dichos empleados son de libre selección y remoción.
Con este marco normativo en mente, analicemos la controversia ante nuestra consideración.
III
La sentencia que hoy se confirma por hallarse igualmente dividido, el Tribunal concluye que el señor García Burgos, quien fuera destituido del cargo de Director Ejecutivo, tiene derecho al pago de la mesada por tratarse de un empleado ejecutivo y por no haberse demostrado justa causa para el despido. De esta manera, se concluye implícitamente que las disposiciones de la Ley Núm. 80, supra, son oponibles ante una entidad como la Asociación, aun cuando sus disposiciones van dirigidas, esencialmente, al *352 sector privado del país. En vista de que aún no hemos resuelto si dicha legislación le aplica a entidades que gozan parcialmente de rasgos que caracterizan al empleo público, no podemos avalar dicha conclusión.
Por el contrario, somos del criterio que las particularidades que el legislador le concedió a la Asociación la ubican en una posición especial dentro del esquema social y económico del país, que se distingue de la típica empresa privada. De hecho, muchos de sus rasgos son incompatibles con los de un negocio privado, por lo que su naturaleza y funcionamiento se asemeja más al de una entidad cuasi pública.
Esta impresión cobra fuerza cuando analizamos las disposiciones del Reglamento de Personal de la Asociación, Reglamento R-014 de 26 de agosto de 1992 (Reglamento de Personal). Este contiene una distinción tajante entre los empleados del servicio gerencia! y los de alta gerencia. Los empleados del servicio gerencial están asignados a los puestos que no están incluidos en el servicio de alta gerencia. Art. 7.1 del Reglamento de Personal, supra. Por su parte, el servicio de alta gerencia comprende los puestos de Director Ejecutivo Auxiliar, Ayudante Ejecutivo, Asoldante Especial, así como los puestos con funciones de dirección de departamentos u oficinas. Todos ellos son nombrados por el Director Ejecutivo con la confirmación de la Junta de Directores. Art. 7.2 del Reglamento de Personal, supra.
Con respecto a los empleados gerenciales, el Art. 11.5 dispone que “[ninguno] ... podrá ser destituido o suspendido de empleo y sueldo a menos que medie justa causa y previa formulación de cargos”. (Énfasis suplido.) De la misma forma, el referido artículo establece que “[l]os empleados gerenciales con status regular tendrán permanencia en sus puestos siempre que satisfagan los criterios de productividad, eficiencia, orden y disciplina que deben prevalecer en la Asociación ...”. (Énfasis suplido.) íd. En con *353 traste con las protecciones que se les confieren a los empleados del servicio gerencial, a los que ocupan cargos en el servicio de alta gerencia no se les ofrece ninguna de estas garantías. Seguramente, ello responde al hecho de que tales empleados ocupan puestos importantes desde los cuales dirigen el funcionamiento de las oficinas y formulan política pública. Por lo tanto, sus labores y la permanencia de su empleo están sujetos a los planes e intereses de la Junta de Directores.
Ahora bien, el puesto de Director Ejecutivo de la Asociación no se encuentra específicamente enumerado dentro de los dos grupos señalados. Aún así, debemos entender que, por definición, se le incluyó dentro del grupo de empleados de alta gerencia ya que tiene funciones de dirección de departamentos y oficinas, lo que implica que no posee el derecho de permanencia que cobija a los empleados incluidos en el servicio gerencial.
Por otro lado, si se entendiera que el Director Ejecutivo no se encuentra en ninguno de los grupos señalados, entonces debemos concluir que le aplican las normas que surgen directamente de la Ley de la Asociación de Empleados del Estado Libre Asociado de Puerto Rico, Ley Núm. 133 de 28 de junio de 1966 (3 L.P.R.A. see. 862 et seq.). Dicho estatuto ordena que la Asociación sea administrada por una Junta de Directores, la cual posee todos los poderes que sean convenientes y necesarios para el logro de los propósitos de la entidad. 3 L.P.R.A. sec. 862d(b). Entre esos poderes se encuentra, precisamente, la potestad para nombrar un Director Ejecutivo y fijarle su sueldo. 3 L.P.R.A. sec. 862f(p). El Director Ejecutivo, por mandato de ley, es el funcionario ejecutivo de la Asociación que está llamado a cumplir con los deberes que la Junta de Directores le asigne y, para ello, se le ordena prestar una fianza que asegure el fiel cumplimiento de sus deberes. Id.
De lo anterior surge que, mediante disposiciones reglamentarias, la Asociación incorporó a sus normas de perso *354 nal la distinción entre empleados de carrera y empleados de confianza (aunque nombrados de otra forma), distinción que se suele circunscribir al sector público del país. De tales pautas se colige, además, que allí se incorporaron las garantías básicas que se le conceden a los empleados públicos y que son las que hacen innecesaria la aplicación de las disposiciones protectoras de la Ley Núm. 80, supra, en ese ámbito laboral.
Conforme a lo anterior, y dada la naturaleza cuasi pública de la Asociación, creemos que no se puede presumir que las disposiciones de la Ley Núm. 80, supra, son oponibles ante la Asociación, sobre todo tomando en cuenta que al hacerlo podría trastocarse la forma como el legislador concibió la naturaleza y el funcionamiento de la entidad y restringiría las prerrogativas que le concedió a la Junta de Directores que administra el organismo.
Finalmente, consideramos que —aún si se entendiera que los empleados de la Asociación podrían estar cobijados por la Ley Núm. 80, supra— el cargo de Director Ejecutivo no goza de las protecciones que concede dicha legislación. Ello en vista de que, conforme a las disposiciones del Reglamento de Personal de la Asociación y de su ley habilitadora, el puesto de Director Ejecutivo constituye un cargo que responde a los intereses de la Junta de Directores, lo que excluye la posibilidad de una expectativa de permanencia en el empleo. Así surge claramente de las disposiciones reglamentarias discutidas y de las pautas legislativas que requieren que el Director Ejecutivo le responda a las necesidades de la Junta de Directores y le preste fidelidad al cumplimiento de sus deberes hacia ésta. Por lo tanto, aun cuando el puesto de Director Ejecutivo no se incluyó expresamente en el listado de empleados de alta gerencia en el Reglamento de Personal, consideramos que dicho funcionario —tal como los empleados de confianza en el sector público— por imperativo legal no tiene expecta *355 tiva de continuidad en el empleo y, en consecuencia, no se requiere justa causa para su despido.
IV
Por los fundamentos que anteceden, revocaríamos el dictamen del foro apelativo y desestimaríamos la reclamación instada por el señor García Burgos contra la Asociación al amparo de la Ley Núm. 80, supra.